## CALVARY BAPTIST CHURCH v. DART.

1. TRUSTEES—BAPTIST CHURCH.—Under the rules of the Baptist Church, the trustees elected by the congregation were only charged with the care and protection of its property, and had no power to make contract of sale or purchase except by authority of the congregation, but their act in question here is held to have been ratified by the congregation.
2. IBID.—Under the facts here, the defendant purchaser cannot be held as trustee of the plaintiff.
3. A CONTRACT to purchase property at foreclosure sale and resell to original owner at same price, with only seven per cent. interest, is lacking mutuality.
4. FRAUD.—Defendant held not guilty of fraud in his acts with reference to purchase of church property.

Before WATTS, J., Charleston, April, 1903.    Affirmed.

Action by Calvary Baptist Church and its trustees against J. L. Dart.    All issues were referred to Master Sass, who filed the following report, omitting the statement of facts in part:

"So far there is no dispute as to the facts.    But with the sale to Dart the contention begins.    The plaintiffs claim that the contract between Dart and the church was that Dart should go to the sale and buy the property for their benefit and practically as their agent, and having done so he should reconvey the said property to the church, receiving in consideration therefor a bond for the amount paid by him, bearing interest at seven per cent., and secured by a mortgage of the property.    They claim that the apparent want of mutuality in this transaction is obviated by the fact that thereby Dart obtained a good seven per cent. investment, and also increased his reputation in the Baptist denomination, to which both he and the plaintiffs belong.

"On the other hand, Dart alleges that while it is true that he did undertake to purchase this property with the primary object of assisting the church in their trouble, and while he

did make the purchase with that intent, he did not intend to, nor did he, bind himself to reconvey in the manner and upon the terms alleged by the plaintiffs, but intended to settle and arrange all such details after the sale had been completed, having, however, clearly intimated to the committee of the church with whom he dealt that his purpose was to retain in his own possession that portion of the land on which the parsonage and shop stood, and to convey to the church the lot which held the church building, the valuations of the two lots to be settled after the sale in accordance with the price paid for the whole property.

"Upon the issue thus joined a great deal of contradictory testimony has been taken. It is claimed by the plaintiffs that under the constitution and by-laws of Calvary Baptist Church, the trustees have no right to make any contracts affecting the real property of the church. If this is true, it proves too much, for in that case the very contract upon which the plaintiffs' case is based falls to the ground, and the whole substratum of the present suit is destroyed. The allegation of the complaint is that the board of trustees are charged with the duty of holding the property of the said church and administering its financial affairs; and in the 5th paragraph of the complaint is set forth the agreement, according to the plaintiffs' view of it, between Dart and the Calvary Baptist Church, which agreement, as testified to by the plaintiffs' witnesses, was entered into between Dart and certain persons claiming to represent the church, one of whom, at least (Washington), was not a trustee at the time. Of the rest, one was the pastor of the church and the others were trustees. If the trustees 'had no power to dispose of the church's property directly or indirectly,' and could not 'contract' with regard to it, clearly this agreement, so far as the church was concerned, was entirely illegal.

"No formal action of the church has been shown authorizing or confirming the alleged agreement.

"A study of the testimony satisfies me that while Dart did undertake to buy in the property for the benefit of the

church, so that the congregation should not eventually be deprived of their church building, he did not make the definite agreement contended for by the plaintiffs. Such an agreement, involving, as it does, a marked absence of mutuality, would have to be proved very fully and distinctly, and I do not think the plaintiffs have succeeded in doing this. On the other hand, the form of agreement contended for by Dart is supported, in my judgment, by the preponderance of the testimony, and is confirmed by the circumstances of the case, as well as by the strong evidence of the written contract or agreement, signed by Dart, Smith, Prioleau, Albert Washington and Reeder, the last five calling themselves trustees of the Calvary Baptist Church, dated 3d September, 1901. By this paper, Dart agreed to sell and convey to the said trustees the church building and so much of the lot of land upon which it stands as would measure seventy-eight feet on north and south lines and fifty-five feet on east and west lines, for the consideration of $1,200, with interest at seven per cent. per annum, payable semi-annually from date. Dart testifies that this was substantially the agreement made verbally between himself and the trustees prior to the sale, and that it was subsequently put in writing at the request of the trustees, and I think the weight of the testimony confirms this. Dart's conduct immediately after the sale is entirely consistent with this view of the case. On July 1st, 1901, he wrote a letter (which is in evidence) to the pastor, officers and members of the Calvary Baptist Church, in which he says: 'The Calvary Baptist Church having been purchased by me at public sale on the 25th of June last, I desire to state to them that for the present, and until I shall be able to make more permanent arrangements with them, I shall require and expect them to pay a monthly rental of $7 to me, which shall be due on the 1st day of the month.' It is testified, though the evidence is conflicting, that this letter was read to the congregation and acceded to at a mass meeting of the church. Whether this was so or not, it is certain that at least one payment of $42 was

made to Dart under this notice. Meanwhile, he himself
went into possession of the other lot and received the rents
thereof. A rental of $7 a month represents seven per cent.
on a valuation of $1,200, the amount specified in the written
paper or agreement above referred to. It seems to me that
these facts all cohere sufficiently to furnish a reasonable and
intelligent story of this whole transaction.

"The plaintiffs' case has not been proved to my satisfac-
tion, nor am I able to discern any sufficient proof of the
fraud charged against the defendant.

"There is some conflict of testimony all through, but look-
ing carefully at all the evidence of all the witnesses, and at
all the circumstances of the case, I am convinced that the
plaintiffs' contention in this case cannot be sustained. I do
not believe that the agreement set up in the complaint was
ever made.

"The only other point in the case is as to the power of the
trustees who signed the contract with Dart in confirmation
of the verbal agreement made before the sale, to bind the
church to carry out the same. It is attempted to defeat this
by the claim that the trustees had no power to sell the prop-
erty. But this objection misses the point. They did not
sell the property. It was sold by the Court against their
will. They were authorized to find some one to help them
in this emergency, and to make the best terms with such a
one as they could. Accordingly they made such terms with
Dart; and I am bound to say that I do not think the bargain
that he drove was an unconscionable one. There is testi-
mony going to show that this arrangement was reported to
the church, and I do not think that this positive testimony
has been rebutted by the negative evidence offered by the
plaintiffs. In my opinion, the action of the trustees was for
the best interests of the congregation, and was, at any rate,
at first accepted by them.

"I, therefore, recommend that the complaint be dismissed
with costs."

The Circuit decree is as follows:

"This case was heard by me at the March term of Court at Charleston, S. C., upon the pleadings, testimony taken before Master Sass, his report and exceptions thereto.

"In view of the very able and earnest arguments of the counsel engaged in the case, I have given unusual and careful consideration to the case before announcing my judgment. I am of the opinion that the master is right in every conclusion reached by him, and I cannot improve on his report. It is, therefore, ordered, decreed and adjudged, that the exceptions to the report be overruled, and that the report be approved, confirmed and made the judgment of this Court, and that the complaint be dismissed with costs."

The plaintiffs appeal from the decree on the following grounds:

"I. *Power of Trustees.*—1. In not holding that the trustees of the Calvary Baptist Church generally had only power to hold its property and not to dispose of it, unless authorized by a mass meeting of the entire congregation, both males and females.

"2. In not holding that the only authority that the trustees had in this case, as given by the congregation of the Calvary Baptist Church, was to get some one to buy in the church's property, viz: the church lot and parsonage lot with the shop thereon, for the benefit of the church, the church to repay the amount so expended in a reasonable time; and that they had no power otherwise to sell or otherwise dispose of the church property.

"3. In attributing to the plaintiffs the position that the trustees of the Calvary Baptist Church 'have no right to make any contracts *affecting* the real property of the church.' The contention of the plaintiffs in this regard being that while the trustees, as authorized by the congregation, had authority to get some one to buy in the church property for the church, and consequently, as effecting this object, to give a bond and mortgage to repay the amount so used, yet they

15—68

had no power to sell or dispose of the property or any part of it absolutely.

"4. In holding that the alleged division of the property and the absolute sale of the parsonage and shop and lot, as enlarged by the defendant, by the moving of the fence back, was not an attempted sale of the property by the trustees, or at least a part of them, to the defendant, and were wholly beyond the power of the trustees. In not holding that the proceedings of Whaley and Hawksford against the church were a mere consent case, and, consequently, the act of the parties and not of the Court.

"II. *The Defendant as Trustee.*—That the Court further erred:

"1. In not holding that in the circumstances developed in this case—the avowed declaration of the defendant (Dart), that he 'was buying the church (property), simply to help the people out' (Whaley's testimony), and his acting with the trustees in the negotiations with Mr. Whaley for the sale at a reduced price, and his other actings and declarations in the matter, that he was buying in the property for the church, etc., he put himself in the position of a trustee and on him was the burden of proof; a—that he was in all things frank and fair; b—that he paid for the property what it is worth; c—that he held out no delusive hopes; d—that he exercised no undue influence on the church; and e—took no advantage of the fears or poverty of the church, and that every doubt will be resolved against him; and further, that the preponderance of the testimony is in all these particulars directly the reverse, viz: a. To Washington and the other trustees and the congregation, his conduct was not frank and fair, as he left them under the impression that 'from the jump, everything was in favor of the church.' b. The property (the parsonage and shop lot as enlarged by the defendant), is proved to be worth $1,500 to $1,800, and yet the defendant aims to get it for $905. c. He held out to the trustees and congregation that he was helping them, that he was the 'savior' of the church, and yet is now seeking to get the larger

part of the property below its value.    d.  The trustees being panic-stricken by the fear of some one buying in the church, he wrought on their fears to increase his demands on them, and took advantage of them to make them sign the contract of September, 1901.

"2.  That the influence acquired by the defendant, Dart, over the trustees of Calvary Baptist Church, especially after he had acquired the title to the property, and the confidence reposed in Dart by the Calvary Baptist Church, should have made him a trustee without power to profit by the transaction.

"3.  In not holding that such trustee could not contract with the said church.    That such contracts, even if otherwise valid, should have been held fraudulent, and have been set aside.

"III.  *Mutuality of Contract.*—That the Court erred in holding that there was no mutuality in the contract if the absolute sale of the property, worth from $1,500 to $1,800, for $905, is not sustained; whereas, the law is, that promise for promise is always a valuable consideration, and the Court has been misled by a consideration of the adequacy of consideration, in which it also erred, as to get an investment now at seven per cent. interest, payable monthly, is more than an adequate consideration.    The Court further erred in holding that the sale by Mr. Whaley was against the will of the church; on the contrary, it was clearly proven that it was with their full assent, and was consented to by the action of Mr. Whaley, Dart and other trustees of the Calvary Baptist Church.

"IV.  *The Alleged Bid of September 1st, 1901.*—The Court further erred in this: The testimony showing that the contract of 3d September, 1901, was made after the defendant had bought in the church and held title from the master to himself, the Court erred in throwing on the plaintiff the burden of proof that the deed was made by the authority of the church.    The burden was on the defendant to prove that that contract was made, not with the trustees only, but

with the congregation before the sale, or ratified after the sale—of which there was an utter failure of evidence as to the congregation, and certainly not a preponderance of the evidence even as to the trustees.

"V. *Fraud.*—1. The Court erred in not holding that the defendant's 'intention (to commit a fraud) in this case, may be proved or *inferred* from the facts, whose tendency is to produce the results,' and that from the facts in the case, the fraud of Dart must not simply be inferred, but is proved.

"2. In not holding that the whole conduct of the defendant and his partisan pastor, Smith, shows a scheme to get the property of the church against the will of the congregation, and at an inadequate price. The removal as trustees of those opposed to the defendant's scheme, the appointment of others to do their work, the resignation of Cuttino to let Smith be appointed chairman of the trustees—the studied secresy both by the defendant and his partisan, Smith, practiced to the congregation, showing this fraud very conclusively.

"VI. *The Resolution of the Mass Meeting, September 4th, 1902.*—The Court erred in failing to take notice of the fact of the mass meeting refusing to confirm the illegal acts of the trustees and setting them aside, and in not holding that the action of the mass meeting, the only one held on the subject, and held as soon as Dart's and Smith's plans were discovered by the congregation, was conclusive against the act of the trustees, in assenting to the division of the property, and its sale at a price under its value to one who held himself forth as 'helping' the church.

"VII. *Facts.*—That the Court erred in his finding:

"1. That the defendant (Dart) did not agree with the church to buy in all its property at the foreclosure sale for the benefit of the church, and to allow the church to redeem the same by paying to him (Dart) the purchase money by him bid, with interest.

"2. That the pretended agreement made the 3d of September, 1902, and signed by Dart for himself and Smith, Prioleau, Reeder and Washington assuming to act for the

church, was, in substance, the agreement made between Dart and the church before the foreclosure sale, and was binding on the church.

"3. That this last alleged agreement was not repudiated by the church at the meeting held 4th September, 1902, as soon as brought to the knowledge of the congregation.

"4. That the bargain the defendant, J. L. Dart, attempted to drive with the plaintiff church, is not an unconscionable one, the testimony showing that such bargain, if driven, would give to Dart property worth $1,500 to $1,800 for an expenditure by him of $905.

"5. That the action of the trustees, in this last mentioned agreement, was for the best interest of the congregation, and was, at any rate, at first accepted by them; it being, on the contrary, greatly to the church's disadvantage, and not as advantageous to them as that offered by Mr. Whaley and another.

"6. That the letter of the defendant, Dart, of 1st July, 1901, and his taking possession of the enlarged parsonage and shop lot, corroborates the Court's finding in the matter.

"7. That the plaintiff's case has not been proved. The testimony proving the claims of the plaintiff, and the fraud charged against the defendant, Dart, though the burden of proof to show the fairness of the transaction was on the defendant, Dart.

"VIII. *Legal Aspect of the Case.*—That the Court erred in not holding that the defendant should reconvey all the property of the church; that an account be taken of the amounts due to him, with interest at seven per. cent., payable semi-annually; the amounts received by him, with like interest; that a reasonable time be given to the church to repay the same, and that the defendant remove the buildings he has begun to build on the lot, and that he restore the former buildings to the positions from which he had removed them."

*Messrs. Young & Young,* for appellants, cite: *Powers of trustees:* 2 Hill Ch., 51; 1 Hill Ch., 356. *As to position of*

*Dart:* 119 Fed. R., 646; 7 Bispham's Prin. of Eq., 292; 4
My. & Cr., 277; Perry on Trusts, sec. 194; 1 Hill Ch., 390;
60 S. C., 358; 56 S. C., 177.   *Church had right to redeem:* 1
Jones on Mtg., sec. 251; 17 S. C., 329, 428; 2 Green. Ev.,
69, 74; 12 Wall., 339; 50 S. C., 174; 54 S. C., 186; 103 U.
S., 651; 12 Wall., 339.   *Agreement under duress is void:* 1
Bay, 13, 470; 2 Bay, 211.   *As to mutuality in the contract:*
6 Ency., 727; 8 Rich., 418.   *Fraud need only be shown by
preponderance of evidence:* Green. on Ev., sec. 80, note A;
14 Ency., 2 ed., 190; 13 S. C., 158; 20 S. C., 507.

*Messrs. W. St. J. Jervey* and *J. L. Mitchell,* contra.   *Mr.
Jervey* cites: *As to alleging and proving fraud:* Max. on
Code Plead., 193; Kerr on Fraud and Mis., 365; 6 Wait's
Act. & Def., 817, 383; 18 Ency. P. & P., 755.   *Inadequacy
of price not ground of fraud:* Kerr on Fraud and Mis., 186;
18 Ency. P. & P., 770.

March 15, 1904.   The opinion of the Court was deliv-
ered by

MR. CHIEF JUSTICE POPE.   On the 16th day of April,
1903, his Honor, Judge Watts, heard the report of G. H.
Sass, Esq., as one of the masters for Charleston County, S.
C., together with the exceptions thereto filed, and also the
testimony offered at the hearing before the master.   The
master had recommended that the complaint be dismissed.
The said Circuit Judge sustained the said master in all
respects, and adjudged that all the exceptions be overruled,
and that the complaint be dismissed with costs.   From this
judgment the plaintiffs have appealed.   The report of the
master, the decree of Judge Watts, and the grounds of
appeal should all be included in the report of this case.

We will now proceed to pass upon these grounds of appeal,
and in order that our views may be better understood, we
will give a brief summary of the facts upon which plaintiffs'
contention is bottomed.   The Calvary Baptist Church, a
body corporate under the laws of this State, was the owner

of a lot of land in the city of Charleston, S. C., whereon was located its meeting house used for divine worship, its parsonage, and also a shop, which last building was usually rented to outside parties. In some way this corporation owed a debt which in June, 1901, amounted, principal and interest, to $3,600. This debt was secured by a bond and mortgage of all the land of the corporation. The obligees of this bond and mortgage were W. Gibbes Whaley and Francis Hawksford, as trustees; the latter was in England at the happening of the events hereinafter mentioned. The trustees above named, the holders of the bond and mortgage, notified the church that some arrangement for the payment of this indebtedness must be made. The church had elected a body called its trustees, which trustees under Rule 7 were to "hold all property or properties of the church in possession, and shall collect such contributions that will enable them to defray all debts, such as repairing and other debts of this said church, at what time fixed by trustees." So when the threat to foreclose the mortgage held by W. Gibbes Whaley and another as trustee was made, the church called upon its trustees to look after the matter. Mr. Whaley, in one of his conferences with these trustees of the church, told them he would call to his aid a Charleston broker, Capt. T. T. Hyde, who reported to Mr. Whaley that the church and lot upon which it stood was worth about $1,000, and the parsonage and shop together with the balance of the land was worth about $1,100. Mr. Whaley, as trustee, offered to take the latter at $1,100, if the church would pay him $1,000 for the church lot. This proposition was declined by the trustees for the church, stating that they wished to keep all the property for the church itself. Soon another element was brought into these discussions. The Rev. John L. Dart, who was then or had been just before pastor of what is known as the Morris Street Baptist Church, also of Charleston, S. C., attended with the trustees of the plaintiff church these conferences with Mr. Whaley. As a result of all these conferences, it was agreed that Mr. Whaley would take

$2,100 for his debt of $3,600, and that the Rev. Dart would go $5 better than Mr. Whaley. A foreclosure of Whaley's mortgage by due legal proceedings was had. Altogether a friendly suit, consent decree. So on about the 2d July, 1901, the sale was made under the judgment in foreclosure. Mr. Whaley bid $2,100, Rev. J. L. Dart bid $2,105, and at that figure he was declared the purchaser. In a few days the purchase money was paid in cash by Dart, and the master delivered to him a deed for the whole property. Dart then wrote a letter to the church, asking that they pay over to him seven per cent. on $1,200 in monthly payments, $7 per month. He (Dart), when asked to give papers to the church, stated that he was just then going north, and that on his return to Charleston papers could be prepared. So, early in the month of September, 1901, Dart met the trustees of the church, and after some discussion all parties signed, sealed and delivered the following paper, to wit: "I hereby promise and agree to and with J. W. Smith, J. R. Prioleau, B. H. R. Reeder, R. Cuttino, A. Washington, trustees of the Calvary Baptist Church, a corporation, to sell and convey to them the building known as the Calvary Baptist Church, at the corner of Morris and Smith streets, this city, and so much of the lot of land upon which said building now stands as will measure and contain seventy-eight (78) feet on the north, also south lines, and fifty-five (55) feet on the east and west lines, on the following terms, etc. :

"1. That the trustees of the said Calvary Baptist Church corporation shall pay to me the sum of twelve hundred ($1,200) dollars, with interest thereon at seven (7) per cent. per annum, payable semi-annually from the date hereof.

"2. That during the time of purchasing the said corporation shall have the right to occupy the said church building; all insurances and necessary repairs to be paid for by the said corporation, and should they fail to do so, I shall pay for them and be reimbursed by the said corporation.

"3. That this agreement shall continue and be valued for a reasonable period of time, and should the said corporation

ultimately fail to purchase the said church property, I shall
not be held responsible for any payments made on account.

"In witness whereof, the parties hereto have hereunto set
their hands and seals, this third day of September, 1901,
(L. S.) J. L. Dart, J. W. Smith, J. R. Prioleau, Robert Cut-
tino, A. Washington, B. H. R. Reeder.

"Signed, sealed and delivered in the presence of Jos. A.
Purcell, F. V. Cleckley."

The church, plaintiff, paid Dart $42 as the semi-annual
interest; but when the next interest became due it refused to
pay, alleging that Dart had bought the property really for
the plaintiff; that he was now attempting to keep it for him-
self; charged that he was trustee for the plaintiff; that he
was guilty of fraudulent conduct to the church; and that the
trustees of the plaintiff church had no right in law or in
morals to sign the paper with John L. Dart, on the 3d
September, 1901; that the plaintiff, church, was willing to
pay Dart principal and interest on $2,105 from July 2, 1901;
but that Dart should reconvey the property to the church.
An action was begun in the year 1902, by this church and its
trustees, to procure the relief hereinbefore specified. Dart
in his answer denies all the material allegations. The issues
of law and fact were referred to G. H. Sass, Esq., as master,
who took a good deal of testimony, sustains the defendant,
and Judge Watts in his decretal judgment does also. We
will now pass upon the exceptions in their order.

1. So far as the trustees of the plaintiff church are con-
cerned, they do not hold any office in the spiritual concerns
of such church. The only officers of a Baptist church are
the pastor and the deacons. A Baptist church "is
distinct from and independent of all others, having no
ecclesiastical connection with any though maintaining
a friendly intercourse with all. *The government is adminis-
tered by the body of the members, where no one enjoys a
pre-eminence but each enjoys an equality of rights."* See
Hiscox's Baptist Church directory. But it is in the power
of the plaintiff in the administration of its temporal affairs to

employ agencies of its own choice, to give such agencies such power over its property as the church may see proper to do. In this particular instance, the plaintiff by its Rule 7 (which we have already quoted), saw proper to elect four trustees to manage its property. This church did not vest the title to its property in these trustees. Of course, it was at all times in the power of this plaintiff church to alter either by enlargement or restriction this control of its property by its trustees. Indeed, it could abolish Rule 7 at any time it saw proper. It was not possible for these trustees legally to assert any rights of their own. When any step was taken or contemplated by them, it was absolutely necessary that the church should clothe them with power. By virtue of their office as trustees, they could not buy or sell church property nor could they mortgage the same. If the church wished to clothe them with any such power, it had to proceed to do so in the way such powers are created by any other person or body. So, therefore, when these trustees signed this paper along with John L. Dart, unless the plaintiff saw proper to authorize it in the first instance or ratify it afterwards, it was mere waste paper. The defendant, Dart, saw this; hence he introduced testimony tending to show that this church ratified the action in its behalf of these trustees, being fully informed of their conduct. This is a question of fact. The master and Circuit Judge have both found that the church knew what those trustees had done, and after such knowledge ratified it. There is contradictory testimony in the record before us. We have felt ourselves bound to adopt the conclusion of the master and Circuit Judge, especially in view of the payment of the $42 as semi-annual interest on the $1,200 set out in the instrument under seal hereinbefore introduced.

2. We cannot hold the defendant, Dart, trustee, for the plaintiff, church, in view of our conclusion as to the paper writing referred to in disposing of the first exception. There is some ugly testimony in the record, however. We refer just here to the testimony of the Rev. D. J.

Jenkins, who on oath says he was willing to give $2,600 for the property and told the pastor, Smith, of the plaintiff church, of such willingness. Smith was a close friend of Dart. Smith prevailed on him not to bid for the property, as he wanted it bid in for the church. But Dart is not connected, by the testimony, with this chilling of bids or with this statement that the property was to be bid in for the church.

3. We think the judgment is right in holding a want of mutuality in the contract alleged by the plaintiff to have been made by Dart. Interest at seven per cent. was too precarious in purchasing property at the price of $2,105, when that was the full market value thereof. Deterioration, possible loss by fire, &c.

4. We think our holding under first exception virtually disposes of this exception. We agree with the appellant that it was incumbent on the defendant to show that the agreement of the 3d September, 1901, was ratified by the church. But we hold that the testimony showed that the church did ratify it.

5. The testimony does not convince us that J. L. Dart was guilty of fraud in his dealing with the plaintiff church. He certainly made a payment for the property in cash, which was more, by a little, than Capt. Hyde as a real estate broker said it was worth. He (Dart) wrote to the church at once after he received his deed. He met the church trustees soon after his return to Charleston in the month of September, 1901. All things were then reduced to writing. He used all the property purchased, except the church, as his own from the date of the purchase. This was to be seen by all men. The church paid $42 as semi-annual interest thereafter. The rents of the parsonage and shop were $156 per annum. If they represented $905 of the $2,105 purchase, it was far beyond seven per cent. These people knew what these rents were.

6. The resolution adopted at the mass meeting of the plaintiff church in September, 1902, cannot throw much

light on the happenings of 1901. Indeed, it is easy to fan a little dissatisfaction into a raging flame with these excitable people.

7. The facts recited in this exception are virtually included in our previous holdings herein, and we will not go over them anew.

8. Having made our views plain as to our inability to upset this settlement of differences between Dart and the plaintiff church, we cannot order Dart to reconvey the property to the plaintiff church, as pointed out and asked for in this, the eighth exception.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.