18508

John DUNN *et al.*, Respondents, v. T. J. MILLER, *et al.*, Appellants.
(148 S. E. (2d) 676)

*James H. Price, Esq.,* of Greenville, *for Appellants,*

*George F. Townes, Esq.,* of Greenville, *for Respondents,*

May 27, 1966.

Moss, Chief Justice.

This is a controversy between two unincorporated religious associations concerning the title to land now in the possession of the appellants and upon which improvements have been made by them.

Laws Chapel Church was organized in 1950. It is a Free Will Baptist Church and at the time this action was commenced was a member of the Toe River Association of Free Will Baptist Churches. It has been served by ministers ordained according to the discipline of Missionary Baptist Churches as well as regular Free Will Baptist ministers. It is a very small mountain church and has been unable to consistently find regular Free Will Baptist ministers to serve as pastors. When being served by Missionary Baptist ministers it remained organized according to the faith and discipline of the Free Will Baptist Church. From the latter part of 1958 until November, 1959, services at Laws Chapel Church were conducted by an ordained Missionary Baptist minister. The church, however, remained a Free Will Baptist Church. In February, 1960, Reverend

H. B. Snow, an ordained Missionary Baptist minister, began conducting services at Laws Chapel Church.

The church building of Laws Chapel and the lot upon which it is situate is very small, being 20 feet by 30 feet. This particular property is not involved in the controversy. The controversy involves a lot of approximately one acre across the road from the church site, which was conveyed to the Board of Deacons as Trustees of Laws Chapel Church in 1950. This latter lot was used as a cemetery by Laws Chapel Church and the deed contains the following recitation: "This property being purchased for the use and purpose of a cemetery of the Laws Chapel Church."

In July, 1960, Reverend Snow obtained a deed signed by Gaither Laws, William C. Laws, John Laws and George Laws, purporting to be trustees and deacons of Laws Chapel Church, conveying the disputed property to the Marietta Second Baptist Church. Thereafter, a church building was erected on the disputed property, which when completed had across its front the name "Marietta Second Baptist Church." The named respondents, alleging that they are the true trustees and deacons of Laws Chapel Church, brought this action as trustees and deacons, and individually and representatives of the class of members of Laws Chapel Church, against the named appellants as deacons and trustees of Marietta Second Baptist Church, and as representatives of the class of all members of Marietta Second Baptist Church, to have the said deed set aside as being invalid and that the congregation of Laws Chapel Church be declared the owner of the disputed property. The appellants, by way of answer, alleged the validity of the deed and conduct on the part of the respondents amounting to an estoppel. The matter was referred to the Master in Equity for Greenville County, who, after hearing the testimony and evidence, found that the respondents were estopped to have the deed set aside and recommended that the prayer of the complaint be denied. Exceptions were taken to the Master's report and the matter was heard by The Honorable Frank

Eppes, Resident Judge of the Thirteenth Judicial Circuit, who held that the deed was not valid and that the respondents were not entitled to invoke the law of estoppel. The appellants have now appealed to this Court.

This being an equity case and the factual findings of the Master and the Circuit Judge being in sharp disagreement on the material issues, this Court has jurisdiction to consider the evidence and finding of fact in accordance with our view of the preponderance or greater weight of the evidence. *McLaughlin v. McLaughlin,* 244 S. C. 265, 136 S. E. (2d) 537.

The record contains the testimony of two ministers who preceded Reverend Snow at Laws Chapel Church. One of the ministers served Laws Chapel Church during 1951 and 1952 and the other in 1958 and 1959. The first minister testified that during 1951 and 1952 the deacons of Laws Chapel Church were W. M. Laws, Charlie Laws and Dave Talley, and the trustees of said church were John Dunn, James Peterson and Richard Peterson. The other minister testified that during 1958 and 1959 the trustees were John Dunn, Richard Peterson and Charlie Laws, James Peterson having died. Testimony from other members of the church identified the trustees as John Dunn, Richard Peterson and Charlie Laws, and the deacons as W. M. Laws, Charlie Laws and Ike Story, Story having succeeded Talley.

The parties to the deed testified as to their official position: Gaither Laws testified that he was not a trustee or a deacon of Laws Chapel Church; John Laws testified that he had never been a deacon or trustee; George Laws also denied having ever been a deacon or trustee of the church; and William C. Laws, (also known as W. M. Laws), testified that he was a deacon but had never been a trustee of the church. There is no testimony in the record which states that William C. (W. M.) Laws, John Laws, George Laws and Gaither Laws were ever elected trustees of the church nor is there any testimony that Gaither Laws, John Laws and

George Laws were ever elected deacons of the church. The evidence offered by the appellants to contradict the testimony of the witnesses as to the persons who were trustees and deacons of Laws Chapel Church is the disputed deed itself, and the testimony of Reverend H. B. Snow that the four persons who signed the deed represented themselves to be trustees and deacons. The only testimony from Reverend Snow, with regard to his knowledge of who the deacons and trustees of Laws Chapel were, is that the four men who signed the deed told him that they were the deacons and had full authority to dispose of church property, and that he relied on their statements without making further inquiry. Reverend Snow also testified that he did not know whether or not John Laws was a member of the church.

The Circuit Judge found that at the time of the execution of the disputed deed, the trustees of Laws Chapel Church were John Laws, Richard Peterson and Charlie Laws and that its deacons were Ike Story, William Laws and Charlie Laws. We think this conclusion is supported by the preponderance of the evidence. The burden of convincing this Court of error in the finding of a Circuit Judge is upon the appellants. *Boatwright v. Crosby,* 83 S. C. 190, 65 S. E. 174; *Watson v. Wall,* 239 S. C. 109, 121 S. E. (2d) 427. The appellants have not met that burden.

It does not appear that a conveyance of the property in question was ever authorized by the congregation of Laws Chapel. The testimony of the respondents is that there was no such authorization. Reverend Snow testified that he did not know whether the congregation had authorized a conveyance of the property. He further testified as follows:

"Q. You believed those four men were a church?

"A. Yes, sir.

"Q. As a Baptist minister do you believe four people can come up and say they are a church and deal with church property?

"A. Yes, sir."

\* \* \*

"Q. You know the deacons and trustees are supposed to have authority from the congregation to make a deed?

"A. They are the congregation."

\* \* \*

"Q. You knew those four men were not all the members of that church?

"A. I do not know how many members they had. They told us they were members, they were trustees and deacons and had authority to give the property away and we accepted what they said."

\* \* \*

"A. I don't know how many members. All I know is those four men said they were members. That is all I know.

"Q. You knew Dick Peterson was a member?

"A. No, sir.

"Q. You didn't know John Dunn was a member of Laws Chapel?

"A. No, sir.

"Q. Didn't you know they had come in the past to Laws Chapel?

"A. I had heard they had been there previous to opening up the mission, but I do not know who was members and who was not members.

"Q. Did you ever try to establish who were the members and who were not members of Laws Chapel Church?

"A. No, sir."

The record is clear that no one knew of a conveyance of the disputed property except the parties who executed the deed and Reverend Snow until after the deed had been executed. The record is also clear that it was Reverend Snow who attended to the drafting of the deed. We think that in view of the foregoing testimony the trial judge was correct in holding that the deed purporting to convey the disputed property was invalid because it was not made by persons properly authorized by the congregation of Laws Chapel to convey property belonging to it. See

*Calvary Baptist Church v. Dart,* 68 S. C. 221, 47 S. E. 66; *Turbeville v. Morris,* 203 S. C. 287, 26 S. E. (2d) 821.

The next question for determination is that of equitable estoppel. In our consideration of the evidence, we bear in mind that the burden of proof is upon the party who asserts an estoppel. *Blue Ridge Realty Co. v. Williamson,* 247 S. C. 112, 145 S. E. (2d) 922. In the *Blue Ridge Realty* case, we said:

"The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudically. *Macaulay v. Howard,* 230 S. C. 140, 94 S. E. (2d) 393.

"In *Hubbard v. Beverly,* 197 S. C. 476, 15 S. E. (2d) 740, 135 A. L. R. 1206, we held that the doctrine of estoppel applies if a person, by his actions, conduct, words or silence which amounts to a representation, or a concealment of material facts, causes another to alter his position to his prejudice or injury. In *Ott v. Ott,* 182 S. C. 135, 188 S. E. 789, it was held that an equitable estoppel cannot arise except when justice to the rights of others demands it. It was never intended to work a positive gain to a party."

On February 7, 1960, Reverend Snow began conducting religious services at Laws Chapel Church. He had obtained permission to open a mission at the church which had been without a minister since November, 1959. The congrega-

tion of Laws Chapel, consisting of thirty to thirty-five persons, attended the services conducted by Reverend Snow. In addition to the congregation of Laws Chapel some members of Cox Chapel, a nearby church where Reverend Snow had previously served as minister, came to the mission. The persons who came from Reverend Snow's former congregation were Missionary Baptists. They were not received into membership in Laws Chapel Church. Because of increased attendance in the small building of Laws Chapel, discussion began concerning the construction of a new church building. At the time this discussion began, there had been no organization of a new church different in membership, faith and discipline from Laws Chapel Free Will Baptist Church. At that time Laws Chapel Church was organized as a Free Will Baptist Church, served by a Missionary Baptist minister, which was not unusual because of its remoteness and inability to consistently obtain regular Free Will Baptist ministers and having present at its services, but not as members, persons other than Free Will Baptist. While discussion was had with regard to the construction of a new church building, there was no discussion of the organization of a church differing in faith and discipline from that of a Free Will Baptist Church. Reverend Snow admitted in his testimony that he had never. asked the members of Laws Chapel to consider changing to another type church. There was nothing in the discussion to indicate to the members of Laws Chapel that the proposed new building would be used for anything other than Laws Chapel Free Will Baptist Church.

In May or June, 1960, work was begun on the cemetery lot across the road from Laws Chapel. At that time there had been no discussion of any deed to the lot in question. The deed was not executed until July, 1960, and was not recorded until August, 1960. It appears from the record that by July subflooring and .walls had been erected. The next step was the construction of a roof. Construction so far had been paid for by contributions collected at the services at

Laws Chapel. It further appears that additional funds were required for the erection of the roof and completion of the building. It does not appear that these financial needs were brought to the attention of the entire membership of Laws Chapel Church. It appears that Reverend Snow, without a discussion with the membership of the church, decided to raise the money by a loan. Reverend Snow then obtained the deed which conveyed the cemetery lot to Laws Chapel Church from George Laws, who had been a loyal follower and supporter of Reverend Snow throughout. Reverend Snow had a new deed drawn from that deed conveying the lot in question to the Marietta Second Baptist Church without any discussion with any members of Laws Chapel, other than George Laws.

The circumstances surrounding the execution of the deed are greatly disputed. Gaither Laws, William Laws, John Laws and George Laws, the parties who executed the deed, and the wife of George Laws, all testified that the deed was executed at George Laws' store, having been brought there by Reverend Snow. He testified that the deed was executed at the office of the notary who prepared the deed for him. The notary testified that he didn't remember whether the deed was executed at his office or at the store nor was he positive that he had, in fact, witnessed it, as the probate thereon indicated. It is clear from the record that William Laws can neither read nor write and is practically deaf. It is also clear that John Laws is not a member of Laws Chapel Church and that Gaither Laws lives in Georgetown, South Carolina. After the deed was executed, a mortgage was executed by George Laws, John Laws and Theron Ward, as members of the Board of Deacons of Marietta Second Baptist Church, in the amount of $2,000.00, in favor of George Laws and Reverend Snow. The mortgage provided that Reverend Snow would first be paid $1,000.00 and George Laws then paid $1,000.00. When asked how he happened to be a deacon of Marietta Second Baptist Church, George Laws answered, "Snow put me in as a deacon."

There had been no organization of a church known as Marietta Second Baptist Church prior to the execution of the deed and mortgage.

A few weeks after the execution of the deed and mortgage, the new church building was sufficiently completed for occupancy. On August 22, 1960, when the congregation was present in the new church, Reverend Snow called a meeting to order for the purpose of organizing the Second Baptist Church of Marietta. A violent disagreement and difficulty arose at that meeting when an attempt was made to organize a new church as a Missionary Baptist Church. It is apparent from the record that the meeting of August 22 was the first time the respondents were advised that the new church would not be a Free Will Baptist Church but that the Marietta Second Baptist Church was to be a Missionary Baptist Church. The respondents subsequently brought this action.

It is the position of the appellants that the respondents stood by and saw them erecting the building on the property without asserting their rights, some of them taking part in the building of the church, and that the respondents are, therefore, estopped from making any claim as to their property rights.

The Master found that Laws Chapel Church had executed and delivered the deed to the property in question in good faith, that it was accepted by Reverend Snow and the appellants in good faith and that the respondents were estopped from making any claim to the property. The Circuit Judge held that the defense of estoppel could not prevail. We think he was correct.

The respondents made no misrepresentations or concealments of material facts. Accepting the appellants' contention as to the manner in which the deed was procured, that is, that the persons who executed it represented themselves to be authorized to convey the property, that conduct, even if sufficient to raise an estoppel against their subsequent

claim, would have no effect on the rights of the other respondents to the relief sought. *McCormac v. Evans,* 107 S. C. 39, 92 S. E. 19. The remaining respondents were not parties to any negotiations concerning the deed.

The name Marietta Second Baptist Church, standing alone, would not negate the belief on the part of the appellants that the proposed new church was to be a Free Will Baptist Church, even if that name had been brought up in the discussion concerning the erection of a new building. It is obvious from the record that Reverend Snow had the intention of establishing a Missionary Baptist Church among the people he was serving, but there is no evidence that his intention was known by the people whom he was serving. The Laws Chapel group were Baptists and there was nothing in the name Marietta Second Baptist Church which would indicate to them that when the new church was completed they would no longer be Free Will Baptists.

By Reverend Snow's own testimony, it is admitted that he had never asked the congregation of Laws Chapel about changing the denomination of the church. None of the discussions concerning the erection of a new church involved a proposed change of denomination. The congregation of Laws Chapel cannot, therefore, be charged with knowledge that Reverend Snow intended to organize a Missionary Baptist group. The appellants received no authority from the respondents to proceed with the erection of a church building to be used in the exercise of a faith different from their own. As far as the deed is concerned, the congregation of Laws Chapel would not be estopped by the unauthorized acts of the parties who executed it, even if those parties had full knowledge of Reverend Snow's intentions. At any rate, construction of the church building was begun prior to the execution of the deed and was completed only three weeks thereafter. Therefore, construction could not have begun in reliance on the deed. Construction was begun in reliance upon the approval given by the members of Laws Chapel to the erection of a new church

building. However, the record leads to the conclusion that the members of Laws Chapel thought a new Free Will Baptist Church was to be erected. As far as the record discloses, knowledge of the true purpose of the new building was solely in the possession of the appellants, there having been no indication that the new building was erected for use by a religious group other than the Laws Chapel Free Will Baptist congregation. Any silence on the part of the respondents could not amount to a concealment of material facts nor can the appellants assert the conduct of the respondents in assisting in the erection of the building as sufficient to raise an estoppel, when the respondents had no knowledge that they were assisting in the erection of a Missionary Baptist Church. There is no estoppel in this case. *Blue Ridge Realty Co. v. Williamson,* 247 S. C. 112, 145 S. E. (2d) 922.

The respondents have offered to reimburse the appellants for any sums spent by them in the erection of the building. The Circuit Judge remanded the case to the Master to take testimony as to what reimbursement may be due the appellants by the respondents. This, we think, was proper. The order appealed from is affirmed.

Affirmed.

LEWIS, BUSSEY and BRAILSFORD, JJ., and W. L. RHODES, JR., Acting Justice, concur.